CCKJCIBA                    Arraignment

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        S1 11 Cr. 424 NRB

5  GULAY CIBIK, et al.,

6              Defendants.

7  ------------------------------x

8

9                                       December 20, 2012
                                        2:35 p.m.
10

11  Before:

12                  HON. NAOMI REICE BUCHWALD,

13                                      District Judge

14

15                      APPEARANCES

16  PREET BHARARA,
        United States Attorney for the
17      Southern District of New York
    JANIS M. ECHENBERG,
18  JAMES J. PASTORE, JR.,
        Assistant United States Attorneys
19
    DONALD du Boulay,
20      Attorney for defendant Brodjik

21  JAMES J. MORIARTY,
        Attorney for defendant Flam
22

23  PAUL GREENFIELD,
        Attorney for defendant Tishler
24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

1           (In open court)

2           (Case called)

3           THE COURT:  Everyone may be seated.

4           I think everyone realizes that the purpose of today's

5    proceeding is to arraign the defendants on the superseding

6    indictment.  So let me begin by asking counsel if you all

7    received a copy of the superseding indictment and had the

8    opportunity to review it with your clients?

9           MR. MORIARTY:  Your Honor, for Mr. Flam, Mr. Moriarty,

10   we have received it, your Honor, and have I have reviewed it

11   with my client and we waive the formal reading.

12          MR. GREENFIELD:  For Mr. Tishler, I have received it,

13   I have gone over it with my client, and we waive the formal

14   reading as well.

15          MR. DuBOULAY:  For Mr. Brodjik, likewise we have

16   received the indictment, I have given him a copy, we reviewed

17   it, and he waives the formal reading.

18          Do you want us to plead not guilty?

19          THE COURT:  I will in a minute.  I will ask them.

20          THE COURT:  Mr. Flam, have how do you plead with

21   respect to the superseding indictment, guilty or not guilty?

22          DEFENDANT FLAM:  Not guilty.

23          THE COURT:  Mr. Tishler, with respect to the

24   superseding indictment, how do you plead, guilty or not guilty?

25          DEFENDANT TISHLER:  Not guilty.

CCKJCIBA                        Arraignment

1            THE COURT:  Mr. Brodjik, how do you plead with respect
2     to the superseding indictment, guilty or not guilty?
3            DEFENDANT BRODJIK:  Not guilty.
4            THE COURT:  All right.  Does anyone have any idea
5     where Mr. Donaldson and Ms. Cibik are?
6            MS. ECHENBERG:  No, your Honor.  We have not heard
7     anything from them.  We expected them to be here.
8            THE COURT:  Did you reach out to them in the last half
9     hour?
10            MS. ECHENBERG:  I have not, your Honor, no.  We can
11     certainly endeavor to do that.  I apologize your Honor.  We
12     thought he was going to come.  We should have done that.
13            THE COURT:  I have one issue with Mr. Flam that I need
14     to address.  Is there anything I need to address with respect
15     to Mr. Greenfield?
16            (Off-the-record discussion)
17            MR. MORIARTY:  Your Honor, if we could vis-a-vis the
18     3500 material, the policy is two weeks before a trial.  I want
19     to ask if the government intends to do that or some other
20     arrangement?
21            MS. ECHENBERG:  Your Honor, we have produced today
22     some 3500 material which is handwritten notes and reports
23     actually that have already been produced of statements of
24     various of the trial defendants, which will be the bulk of one
25     of our agent's testimony, and we intend to produce the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

CCKJCIBA                        Arraignment

1    remainder of 3500 just after the New Year, January 4th at the

2    latest, but we'll endeavor to do it as soon after the New Year

3    as we can.  We may do it on a rolling basis starting on January

4    2nd, but we will certainly complete it by January 4th.

5         MR. MORIARTY:  Your Honor, there is one other

6    situation.  At this point, we are up to Bates Stamp Document

7    No. 66,279.  In addition to that, we have databases in

8    computers, from computers into a hard drive that the government

9    has given access to for several -- quite a number of months,

10   although recently this new computer's worth of data, as I

11   understand it, is also being loaded into that database.

12        The government's position is essentially Rule 16 is,

13   the documents we are going to use, they're in there somewhere.

14   So since you have had access to them and you can look at them,

15   that completes our Rule 16 obligation.

16        Respectfully, I disagree with that.  I don't think

17   that is what the rule means.  I don't think Rule 16 means you

18   drive a truck up and there is a hundred thousand documents in

19   there, and as we go through the trial, we are going to use the

20   ones we use, but you don't have a right to object because the

21   truck was out there and you should have looked at it.  I think

22   that is a basically unfair way to do it especially in a case

23   that is essentially a document case.

24        I have my own situation.  I have been asking the

25   government repeatedly to identify which documents they're going

1    to say my defendant supposedly signed.  Initially the

2    government said he signed a number of them, we'll let you know.

3           Then the government said we are not going to say he

4    signed any of them, but he gave permission to sign them.  Now

5    the government is going to say well, we don't know, some are

6    and some aren't.  What we are going to do, most likely

7    noncommittal, is we are going to take some of these documents,

8    we don't know which ones, we are going to take known signatures

9    of the defendant and show the whole mess to the jury and let

10   them figure it out.

11          Now, I don't know, I haven't gotten into whether or

12   not they're allowed to do that, but I certainly would think

13   less than 30 days prior to a trial the government should have

14   been able to say we are going to put the following documents

15   in.  This is our mainstay, basically what our case is.  There

16   may be other documents that come out because of

17   cross-examination and things like that, we understand that

18   happens in a trial all the time, but you certainly, certainly

19   any case I have ever been in at this stage of the case there is

20   a core number of documents the government says this is them and

21   knock yourself out.

22          We still don't have that.  I am not saying they

23   haven't given us guidance.  They have.  I am not saying they

24   haven't steered us in some direction, but there is still -- I

25   understand the government's position we can give you

1    documentation as this trial goes through, not collaterally or,

2    you know, unimportant documents, but anything we find we can

3    hand it to you during the trial and put it in during our case.

4    It seems to me there should be a line in the sand at some point

5    so we know what we have to defend against.

6              THE COURT:  I'll let the government respond.

7              MS. ECHENBERG:  Thank you, your Honor.

8              I think Mr. Moriarty has mischaracterized what we have

9    done.  If I could have an opportunity to relay for your

10   Honor --

11             THE COURT:  Sorry.  Just one second.

12             (Pause)

13             THE COURT:  Okay, Mr. Donaldson is on my line up

14   stairs.  He says that he didn't know about this conference.  I

15   am not sure, Brett, how did we inform them?

16             THE CLERK:  The government presented the date, but

17   there was also e-mail confirmation and he was on e-mail.  I

18   didn't send it.  I believe James sent it.

19             (Pause)

20             MR. PASTORE:  Your Honor, if it is more convenient, we

21   have one defendant who needs to be arraigned on January 7th,

22   Mr. Schwartz who is in Florida, if that is convenient so that

23   the court can see both of them.

24             (Off-the-record discussion)

25             MS. ECHENBERG:  We had a call to defense counsel last

7

week where we --

THE COURT:  All of them?

MS. ECHENBERG:  Yes, where we tried to help them focus
in on the key documents we are going to be focused on at trial
which are the alien files, the Department of Labor records and
the client files for each of their clients.  We had previously,
many months ago -- frankly, a year ago -- we had isolated the
client files, A files and Department of Labor files that relate
to each sponsor defendant, of which Mr. Flam is one.

There are 17 that relate to Mr. Flam.  There are many
more for the other defendants.

THE COURT:  When you say "client file," what is a
client file?

MS. ECHENBERG:  There was a search of the Earl David
law firm, and during that search all of the files in the law
firm were retrieved for each alien client for which the law
firm had made an application to the Department of Labor for
alien labor certification, and if it was successful
subsequently to Customs & Immigration Services.

There is a file on that client that shows the
chronology of what the firm was doing for that client.  It
contains things that either we will contend Mr. Flam himself
signed or he gave approval and had knowledge of other people.

THE COURT:  17?

MS. ECHENBERG:  There are 17, yes.

CCKJCIBA                     Arraignment

1            MR. MORIARTY:  If I can inject for a second.  She is

2       right, I agree, the Bates numbers of those being 2399 to 2514.

3            THE COURT:  Whatever!  You have had 17 files in which

4       your client's name appears for a long time.

5            MR. MORIARTY:  Right, we have no problem with that.  I

6       am simply asking them for those files that contain what

7       purports to be a signature of my client.

8            THE COURT:  Okay, but you know what, you're a defense

9       lawyer and you can:  A, get a handwriting expert to testify

10      that -- excuse me.  I am sorry.

11            (Off-the-record discussion)

12            THE COURT:  Mr. Donaldson will come in on the 7th.

13            MS. ECHENBERG:  Okay.

14            THE COURT:  Okay.  Just to go back, let's assume the

15      government may have alternate positions:

16            One, your client personally signed some or all of the

17      documents which have his name in the 17 files, or your client

18      didn't actually sign them, but he gave someone permission to

19      use his name and sign his name.

20            Now, I'm not sure that the government is required to

21      pick between those alternative theories, although clearly if

22      they wanted to stress the "it is his signature theory," they

23      might get their own handwriting expert to testify, but I think

24      the law is also that his handwriting does not require expert

25      testimony and that jurors are entitled under the law to make

1    their own judgments about that.  Don't you have in a sense the

2    same, you know, options?

3            MR. MORIARTY:  Well, I understand what your Honor --

4            THE COURT:  Understand, I am not saying that I am

5    opposed to requiring the government to guide you through, you

6    know, an incredible mass of documents.  There is authority for

7    that and it makes sense.

8            It makes sense for another reason, because if they

9    don't do that, then they don't persuade defendants that they

10   ought to plead because they really have the goods on them.  So

11   they should help their lawyers see what the evidence is.  So it

12   does them no good to and makes them work unnecessarily if they

13   hold the evidence too closely to the vest.

14           So we have these 17 files, right?

15           I am not sure what the problem is with those?

16           MR. MORIARTY:  There is no problem with those other

17   than I would like to know what their theory is at this stage of

18   the game.  At some point the government is going to have to

19   make an argument to the jury as to what their theory is with

20   these, I think they are, what these signatures are.  I am just

21   asking if we could know that now because certainly if I get a

22   handwriting, I have to tell the handwriting expert the

23   government contends that is or is not his signature; and,

24   therefore, you know, do what you want.

25           THE COURT:  The handwriting expert can testify without

1    any guidance from the government that all, none or some of the

2    signatures are those of Mr. Flam.  I don't think his ability to

3    testify about that is dependent on the government's theory.

4    The government could be wrong and it wouldn't get us very far.

5         Let's say the government says Signatures 5, 8 and 9

6    are really Mr. Flam's, but the evidence they're contending, you

7    know, are ones where he gave permission.  They tell you that.

8    Your guy can still say they're wrong.  They could be wrong.  I

9    don't know that that's the key and I don't know that the law

10   requires them to choose between the alternate possible

11   theories.

12        MR. MORIARTY:  Certainly I don't disagree with you

13   theoretically, your Honor.

14        THE COURT:  Right.

15        MR. MORIARTY:  Certainly if they were to say out of

16   the 17 signatures, we say one, two and three belong to Mr. Flam

17   and the rest do not, the handwriting expert has to only examine

18   one, two or three.

19        THE COURT:  I think his testimony would be much better

20   if he said I say these are genuine or they're not because see

21   this characteristic, see that characteristic, it doesn't appear

22   here, it does appear there.  I don't think -- I think that is

23   part of his testimony.  He would be comparing genuine ones with

24   ones that aren't and demonstrating to the jury what the

25   difference is and how he knows at least in his opinion.

1          MR. MORIARTY:  It would be a clearer presentation to

2     the jury if he is talking about three signatures as opposed to

3     17 signatures the government is saying that belong to my

4     client.

5          THE COURT:  But the government is nonetheless under

6     some theory saying your client is criminally responsible for

7     all 17.

8          MR. MORIARTY:  Right.

9          THE COURT:  Sorry.

10         (Off-the-record discussion)

11         MR. MORIARTY:  I guess we'll play it out, Judge, and

12    see what the government's theory eventually is.  I will just

13    make an application as it comes in.

14         THE COURT:  Is there some other discovery issue you

15    wanted to raise?

16         MR. MORIARTY:  Other than, your Honor, I don't know

17    what is going to come up in, as I say, we have a statement the

18    17 files are my client's.  I am assuming that is probably all

19    it is.  As I say, we are getting information that a lot of data

20    was coming out of another computer going into a data bank --

21         THE COURT:  Given the alleged role of your client, why

22    do you care?

23         MR. MORIARTY:  If it has nothing to do with my client,

24    I don't care.

25         THE COURT:  When they put this database on this disc,

1   can't you search it?

2          MR. MORIARTY:  Apparently I am told there is some

3   program we'll have to get and we'll be able to search it.  That

4   is what we will be doing, yes.

5          THE COURT:  The answer is it doesn't matter whether it

6   be 200,000 documents on the disc, but if you could put in the

7   name Flam and whatever comes up is presumably, in the case of

8   your client, what he did is the only thing that matters.

9          MR. MORIARTY:  Correct, correct, but given where we

10  are in the case, what I am saying is I don't think what the

11  government thinks will come up here.

12         If some issue -- I doubt very much if it is going

13  to -- if it should come up of something that we now have to

14  engage in proving or disproving, all I am saying is we are

15  getting that situation kind of late in the game, and that is

16  all I am saying.

17         MS. ECHENBERG:  I can address just that.  We made

18  defense counsel aware in November 2011 these computers were

19  available for review, and shortly after that we made them

20  available to download onto hard drives.

21         Mr. Greenfield got one from us in May of 2012.  Mr.

22  Moriarty never requested one until yesterday, and your Honor is

23  absolutely right, searches are -- these are word-searchable

24  databases.  To the extent we are going to use any documents

25  from these databases -- which frankly, your Honor, we continue

1    to search as well -- we are going to mark those as exhibits and

2    we're going to give the exhibit binders to defense counsel at

3    least a week in advance of trial.  As we find things in this

4    database, we are producing those documents individually.

5            One other thing, your Honor, just to note for the

6    record, we have given defense counsel a detailed index of the

7    discovery.  We described it as we produced it.  Earlier this

8    week we produced a multipage detailed index, and in parentheses

9    we noted what documents related to what defendant to make it

10   easier.  We also sent Mr. Moriarty directly a letter where we

11   lay out specifically the discovery beyond these files that we

12   have talked about, specifically the other discovery that

13   relates to his client.

14           I think we have given him in particular and all

15   defense counsel as good a guide as we can what matters for

16   their client, and then there will be marked exhibits, of

17   course.

18           MR. MORIARTY:  Not to beat a dead horse, but that is

19   essentially correct.  However, we did receive information there

20   is a new computer that has been found.  That new computer from

21   Mr. Earl David's office or somewhere connected to him, that new

22   computer is going into a database.

23           The government has given us, as I say, a lot of

24   documents over the last several months.  I think I am confined

25   to these files.  All I am saying is I want to get as much

1    information from the government as quickly as we can what

2    they're going to use so we are not faced with some kind of

3    surprise situation.  That is the purpose of the application.

4              THE COURT:  Well, the bottom line is there will be no

5    surprises.  That is the way the rules are set up.  It is not

6    the equivalent of civil discovery.  The fact that they're going

7    to give you exhibit binders a week before trial seems for the

8    U.S. Attorney's Office to be pretty liberal and I am not saying

9    inappropriate.

10             I applaud them, but frankly a great deal of what

11   you're saying just sounds like the David law office, having

12   been in this business as it were for a very long time, created

13   an awful lot of stuff, most of which can't possibly have

14   anything to do with you.  To the extent there is another

15   sponsor, you don't care.  It is the only thing is finding your

16   client's name or his business --

17             MR. MORIARTY:  Correct.

18             THE COURT:  -- on a document.  If you can search for

19   that, boy, that is a lot easier than when I was a kid, a young

20   lawyer and there was no such thing as a computer and --

21             MR. MORIARTY:  Nor I.

22             THE COURT:  You just looked, right?

23             MR. MORIARTY:  Indeed, that is what you did.

24             THE COURT:  It seems to me certainly for someone in

25   the position of a sponsor, it sounds like the government has

CCKJCIBA                          Arraignment

1    been reasonable.  It sounds like yes, there are a ton of

2    documents, but it is perfectly obvious you can find the ones

3    that have anything to do with your client, and most of them

4    have nothing to do with your client.

5          Your client's liability or guilt or innocence doesn't

6    turn on whether there were 600 other, you know, situations that

7    your client had nothing to do with.  It sounds like your

8    universe is 17.  It seems pretty manageable.

9          MR. MORIARTY:  I am assuming that it isn't.

10          THE COURT:  Mr. du Boulay, do you want to say

11    something?

12          MR. DuBOULAY:  No.

13          MR. GREENFIELD:  No, Judge.

14          MS. ECHENBERG:  Your Honor, we had one other

15    administrative request and then one other related discovery

16    issue to raise.  On the administrative side, I know we are in

17    five defendants at trial as of now.  I don't know if we want to

18    get an extra table.

19          THE COURT:  We are going upstairs.

20          MS. ECHENBERG:  We are?

21          THE COURT:  Here are we going, Brett?

22          THE CLERK:  I don't think we have the the number yet.

23          THE COURT:  No.  I think we do.

24          MS. ECHENBERG:  Okay.

25          THE COURT:  Hold on.  We have one of the giants, yes.

1    I don't think we'd make it here.

2              MS. ECHENBERG:  Should we be in touch with Mr.

3    Tanenbaum about technology?

4              THE CLERK:  We'll talk.

5              THE COURT:  We do know that we have gotten one.

6              MS. ECHENBERG:  My colleague wanted to raise one

7    related-discovery issue.

8              MR. PASTORE:  Your Honor, as the court has heard, we

9    have been engaged with Mr. Moriarty in conversations regarding

10   the discovery, helping him through not only formally in the way

11   we described but also informally as your Honor has suggested.

12             One of the things that has come to our attention, Mr.

13   Moriarty has indicated in conversations that he has documents

14   establishing, among other things, the actual business that his

15   client was running or purporting to run was, in fact, a

16   legitimate business.  We are obviously interested in seeing

17   those documents.  We have asked them to produce them formally

18   on November 10th, 2011.

19             We renewed our request informally and then we put it

20   again in writing December 18th, 2012.  We would like to see

21   them because obviously the last thing we want to do is

22   prosecute someone who may actually be innocent if there is

23   evidence to that effect.  We want to review it.  Actually from

24   a Rule 16 standpoint, we want to flag for the court, to the

25   extent Mr. Moriarty intends to put on a defense case in chief

1    and introduce those documents, the government does request

2    production of them.  We are not moving now to order production

3    or compel production, but it is something that we wanted to

4    flag for the court since we were talking about discovery

5    issues.

6          MR. MORIARTY:  So the record is clear, I do not

7    actually have those documents in my possession, but there is no

8    doubt that the documents exist.  I am interested, if the

9    government has said and the court may be aware, I sat with the

10   government with my client on an innocent proffer.  We talked to

11   the government about this whole situation, how my client got

12   involved in the first place.  The government listened.  They're

13   not obligated to accept our explanation, I get that, and they

14   didn't.  We have always been ready to try to resolve this in

15   that way, which always remains.

16          If the government is saying here if we can prove the

17   bakery existed, they then will shift their belief and dismiss

18   the case.

19          THE COURT:  Look, you have disclosure obligations

20   under Rule 16 (b).

21          MR. MORIARTY:  Right.

22          THE COURT:  And just as I said earlier, it doesn't, in

23   my view, advance the government's interest in the large to play

24   it too close to the vest.  The same observation applies to a

25   defendant apart from the obligation in 16 (b) that obligates

1    you.  I don't want to get into the issues of trial prep,

2    attorney-client privilege, et cetera, as to why it would be

3    that if the documents really exist, you don't have them yet.

4    That is not my purview.

5              MR. MORIARTY:  If I can respond briefly.

6              To be honest with you, I agree with the court a

7    hundred percent, we sat in an innocence proffer and we were

8    forthcoming, did provide documents, but that issue whether or

9    not my client had a bakery never came up.  I didn't think it

10   was an issue until recently the government now has said, by the

11   way, you never had a bakery in the first place.

12             THE COURT:  Bakery or not, if it is what we might call

13   a mom and pop store, and it can be real, but if it is true and

14   yet I don't know, that he sponsored 17 people, and there is no

15   way that this business could have actually supported 17

16   employees, whether it is a real business or not is in the end I

17   think not dispositive.

18             MR. MORIARTY:  Just as a point of clarity, your Honor,

19   those 17 events that the government says my client is

20   criminally responsible for happened over a five-year period.

21             It is not that somebody walked in and filled out an

22   application for 17 people for that day.  It happened over a

23   five-year period those applications went in.  My client still

24   abides by that decision, he had nothing to do with them

25   whatsoever.

1          THE COURT:  You know what?  I don't have any views.  I

2    will be learning most of the facts of this case at the same

3    time that the jury learns them.  I cannot almost honestly say I

4    have no views because I have no basis to have any.

5          MR. MORIARTY:  I understand my obligation, your Honor,

6    and I physically do not have the documents.  The reason is this

7    fairly recently come up as an issue.  They're easily obtainable

8    by the government.  That is okay, we will get what we have to

9    get and we'll be happy to give the government copies.

10         THE COURT:  Let me just ask.  We are owed motion

11   papers tomorrow.  The reason I am not going to be here, I need

12   to go to a funeral of not someone I know, but what is the

13   timetable on that?  I was sort of hoping that if they got here

14   early enough in the day, they could be Fed Exed to my home.

15         MS. ECHENBERG:  We can probably file it tonight, your

16   Honor, and e-mail it to Chambers if that is helpful.  The

17   request to charge, however, and voir dire may be tomorrow

18   morning if that is okay?

19         THE COURT:  That is fine.

20         MR. GREENFIELD:  I filed the motion in limine and

21   delivered copies to your Honor last week.  I actually have the

22   reply here with me today if I could hand them up.

23         THE COURT:  That would be great.

24         MR. GREENFIELD:  I have a copy for the government as

25   well and you would have them today.

1          THE COURT:  Excellent.  That is even better.

2          MR. DuBOULAY:  I will file a motion in limine, but it

3    won't be tomorrow morning.  Probably late in the day --

4          THE CLERK:  Response?

5          MR. DuBOULAY:  Response, yes.

6          THE COURT:  If we can get it by mid-afternoon, that

7    will be helpful; in other words, when staff is still here to

8    put it into Fed Ex.

9          MR. DuBOULAY:  Okay.

10         (Off-the-record discussion)

11         MS. ECHENBERG:  Only other issue, your Honor, is the

12   exclusion of time because we're under a new indictment and we

13   have extended the trial by start date by one day.  It might

14   make sense to exclude time until then the 15th.

15         THE COURT:  Is there any objection?

16         MR. GREENFIELD:  No.

17         MR. DuBOULAY:  Motion practice.

18         MR. GREENFIELD:  No objection.

19         MS. ECHENBERG:  Thank your Honor.

20         THE COURT:  Mr. Moriarty, can we deal with the

21   financial affidavit for your client.

22         (Pause)

23         THE COURT:  Mr. Flam, do you solemnly affirm that the

24   information in this financial affidavit is true and correct?

25         DEFENDANT FLAM:  Yes, I do, your Honor.

CCKJCIBA                         Arraignment

1           THE COURT:  Mr. Moriarty, I got permission from the

2   Chief Judge today to appoint you as CJA counsel.

3           MR. MORIARTY:  Thank you, your Honor.

4           THE COURT:  If you would do this for me, would you

5   take this down to the Magistrate's?

6           MR. MORIARTY:  Sure.

7           THE COURT:  And tell them that I can produce to them

8   the Chief Judge's endorsement.

9           MR. MORIARTY:  I would be happy to do that.  Thank

10  your Honor.

11          (Court adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25